JOHN F. O'LEARY *v.* LUMBERMEN'S MUTUAL
CASUALTY COMPANY

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued February 8—decision released June 19, 1979

*Irwin E. Friedman,* with whom, on the brief, were *Christopher C. Burdett* and *Bracken C. O'Neill,* for the appellant (defendant).

*Richard F. Oburchay,* with whom was *George L. Holmes, Jr.,* for the appellee (plaintiff).

LOISELLE, J. The plaintiff brought this action against the defendant insurance company pursuant to General Statutes § 38-175 because of the defendant's refusal to satisfy a judgment previously rendered against the defendant's insured. The trial court found the issues for the plaintiff and, from the judgment rendered, the defendant has appealed.

The finding as corrected is, in part, as follows:[1] The plaintiff John F. O'Leary was a passenger in an automobile involved in an accident with another automobile owned and operated by Bruce E. Dewey on November 7, 1969. As a result of the collision, the plaintiff suffered injuries and brought suit against Dewey and the driver and owner of the vehicle in which the plaintiff was a passenger. The

[1] In its assignment of errors, the defendant claims the court erred in not including innumerable paragraphs of the draft finding in its finding. Those paragraphs which are not material, implied in the finding made or are considered abandoned by the omission of any discussion of them in the brief are not considered. *Ayers* v. *Ayers,* 172 Conn. 316, 319, 374 A.2d 233 (1977). Those paragraphs referring to the testimony of a witness or to hearsay evidence are not admitted or undisputed facts even though uncontradicted. *Yale University* v. *New Haven,* 169 Conn. 454, 463, 363 A.2d 1108 (1975); *Stoner* v. *Stoner,* 163 Conn. 345, 347, 307 A.2d 146 (1972). Those paragraphs of the draft finding regarding the attitude of the court in the prior trial as inferred by counsel are not established facts. Where the finding does reflect the actions of the court in the previous trial, however, what was stated by the court to counsel is added to the finding. The attack on the finding itself is not briefed and in fact those paragraphs attacked in the assignment of errors are accepted in the defendant's brief as a basis for its argument.

defendant insurance company had issued an automobile insurance policy to Dewey for property damage and bodily injury which was in effect on November 7, 1969, and covered the automobile operated by Dewey on that day. Condition No. 21 of the policy provided, in part, that "the insured shall cooperate with the company and, upon the company's request, assist . . . in the conduct of suits . . . and the insured shall attend hearings and trials and assist in securing and giving evidence."

Sometime in 1970, Dewey was contacted by the defendant and was told of the law suit and that he should keep the defendant informed of his whereabouts. In May and again on October 5, 1975, counsel retained by the defendant to defend Dewey notified the defendant's claims supervisor that the O'Leary case had been put on the assignment list for trial in Bridgeport. On October 20, 1975, Dewey was subpoenaed by the plaintiff's counsel to appear at the Superior Court in Bridgeport on October 22, 1975; but an instruction on the subpoena advised Dewey to call prior to coming to court. When Dewey did call, he was advised not to come. In December, 1975, Dewey received a second subpoena from the plaintiff's counsel to come to Bridgeport and he complied, only to wait for the entire day without talking to anyone or being called to testify.

On December 19, 1975, a letter was sent to Dewey by the defendant advising him that the case would be reached soon and asking him to contact his counsel in Bridgeport. On January 12 or 13, 1976, a claims adjuster for the defendant spoke to Dewey on the telephone and advised him that the case would be reached for trial that week and that his testimony was necessary. On January 14, 1976, the

claims adjuster again spoke to Dewey and directed him to be at his counsel's office in Bridgeport at 1:30 p.m., Thursday, January 15, 1976. On the same day, his counsel attempted to reach Dewey by telephone. He was unsuccessful but did leave word for Dewey to call. Dewey did not appear at his counsel's office at 1:30 p.m., January 15, 1976, but did call at about 4:40 p.m. Dewey agreed to come to his counsel's office at 9:30 a.m. the next morning to talk to his counsel and he was given instructions on how to get there from Hartford and where to park.

Dewey did not appear at his counsel's office on January 16, 1976. When he failed to appear, his counsel advised the defendant's claims supervisor of Dewey's absence and told him to make an effort to locate Dewey. On that day the claims supervisor wrote a letter to Dewey advising him that if he failed to appear and testify at the trial, the defendant *would* disclaim coverage and refuse to pay any judgment. At the trial on the morning of January 16, 1976, after the plaintiff and codefendant had rested, Dewey's counsel requested a brief recess to make further efforts to locate Dewey. The court at that time commented to the effect that this was the second time the trial was held up in order to locate Dewey. In response, Dewey's counsel told the court that he had spoken with Dewey and his son the previous evening. The court then stated: "I do want to proceed with the case . . . . I'll take a five minute recess."

When the trial resumed, Dewey's counsel put a statement on the record concerning Dewey's absence. He also stated that the defendant had that morning sent a certified letter of disclaimer to Dewey for failure to cooperate. Counsel did not request a

continuance to the next court day. The court in the present case in one of its conclusions found that when Dewey failed to appear on the morning of January 16, 1976, Dewey's counsel consulted with the defendant's claims supervisor and was instructed not to ask for a continuance or to make any further effort to locate Dewey. In the underlying negligence action, the jury had returned a verdict in favor of the plaintiff O'Leary in the amount of $30,200 against the defendant Dewey only. The motion to set aside the verdict was denied.

On Monday, January 19, 1976, Dewey called his counsel at his office. Counsel told Dewey that the jury had returned a verdict of $30,200 against him on the previous Friday and that the defendant insurance company had disclaimed coverage because Dewey had failed to appear and cooperate in the defense of the suit. Dewey explained that he had attempted to come to the trial but had encountered car trouble and that he had been unable to get to Bridgeport. Dewey's car had broken down at approximately 8:30 a.m. on Friday, January 16, 1976, while on the way from his home in East Hartford to the trial in Bridgeport. He had the car towed off the highway to a garage. Dewey then went to a bar and did not call anyone to explain his failure to appear at his counsel's office or at the trial. Dewey was never sent a letter of disclaimer.

The court in the present action concluded that Dewey did not breach condition No. 21 of the insurance policy issued to him by the defendant insurance company. This conclusion was based on the finding that Dewey's car broke down while he was on his way to Bridgeport. The court further concluded that when Dewey did not appear on January

16, 1976, his counsel should have requested a continuance until the next trial day. The court also found that counsel was instructed by the defendant not to ask for a continuance or to make any further efforts to locate Dewey. An ultimate conclusion was that the defendant breached its duty to protect the interests of its insured, Dewey, because it did not request a continuance of the trial after Dewey failed to appear. The defendant attacks the court's conclusions as not suppported by the subordinate facts found.

To test the conclusion that when Dewey did not appear at the trial on Friday, January 16, 1976, the defendant decided to disclaim coverage rather than request a continuance, we have examined the defendant's reference to the testimony of Dewey's counsel in the appendix and to the transcript of such testimony. Practice Book, 1978, § 3049; *Gordon* v. *Indusco Management Corporation,* 164 Conn. 262, 275, 320 A.2d 811 (1973). The following interchange between Dewey's counsel in the previous case and the court is pertinent on this issue. The court asked the witness whether he had "discussed it with Mr. [Kenneth] Bickford," the defendant's claims supervisor. The court inquired: "You decided that since your client didn't appear you would disclaim coverage and proceed on that basis rather than asking for a continuance of it to the following week?" After the witness replied, "That's right," the court asked: "[I]s there any reason why you did not make a motion for a continuance?" to which the witness replied, "Yes, because I had discussed it with Mr. Bickford." There was an objection and the court stated: "I think he just answered what he just said. He discussed it with Mr. Bickford and they decided that they would disclaim coverage rather than make

a motion for further continuance." No effort was made to contradict this statement, and when Dewey's counsel was asked if he ever made application for a continuance of the case, he answered "No."

In the absence of estoppel, waiver or other excuse, cooperation by the insured in accordance with the provisions of the policy is a condition the breach of which puts an end to the insurer's obligation. *Arton* v. *Liberty Mutual Ins. Co.,* 163 Conn. 127, 133, 302 A.2d 284 (1972); *Guerin* v. *Indemnity Ins. Co.,* 107 Conn. 649, 654, 142 A. 268 (1928). The lack of cooperation, however, must be substantial or material. *Curran* v. *Connecticut Indemnity Co.,* 127 Conn. 692, 696, 20 A.2d 87 (1941); *Rochon* v. *Preferred Accident Ins. Co.,* 118 Conn. 190, 198, 171 A. 429 (1934); annot., 60 A.L.R.2d 1146, 1150. In this state, where an insurer raises the issue of the violation of the cooperation clause of the policy by a special defense, the burden is on the plaintiff to prove cooperation by the insured. *Arton* v. *Liberty Mutual Ins. Co.,* supra, 135; *Manthey* v. *American Automobile Ins. Co.,* 127 Conn. 516, 519, 18 A.2d 397 (1941). It was for the plaintiff to show that the absence of the insured was excused or justified. *Arton* v. *Liberty Mutual Ins. Co.,* supra, 135; annot., 60 A.L.R.2d 1146, 1149.

It is admitted by everyone that on the morning of January 16, 1976, the insured Dewey was not in court to testify after he had been told to be there the night before by his attorney. The issue of whether there was a lack of cooperation cannot be decided by determining whether there was an abstract conformity to ideal conduct on the part of the insured. It is a pragmatic question to be determined in the light of the particular facts and cir-

cumstances brought out in the particular case. *State Farm Mutual Automobile Ins. Co.* v. *Palmer,* 237 F.2d 887 (9th Cir. 1956); annot., 60 A.L.R.2d 1146.

When Dewey was subpoenaed in October he was willing to appear. In December he did appear in Bridgeport and waited around all day with no one talking to him. Although he did not appear at his attorney's office at 1:30 p.m. on January 15, 1976, he did call later in the afternoon. The finding does not reveal why he did not appear at 1:30 p.m. He agreed with his counsel to be present the next morning. He left his home in East Hartford early enough to be in Bridgeport at the appointed time. His car broke down at 8:30 a.m. while he was on his way to Bridgeport. He had to have his car towed off the highway to a garage. Evidently, he went to a bar while his car was being fixed and he did not call anyone to explain his failure to appear. Meanwhile, back in Bridgeport, when it was learned that Dewey was not present at the time of trial, the defendant made a decision to disclaim rather than to ask for a continuance to determine whether Dewey would not appear or whether he was prevented from appearing by some unforseen event.

On those facts, the court concluded that Dewey did not breach condition No. 21 of the policy with the defendant; that Dewey was unable to appear at court because his car broke down; that a written notice of disclaimer was never given to Dewey, only notice that the defendant would disclaim in the future; that the defendant instructed its counsel not to ask for a continuance to make further effort to locate Dewey. The court further concluded that the defendant breached its duty to protect the interests of the insured Dewey because it did not request a continuance of the trial when Dewey failed to

appear, and that the defendant did not really care whether Dewey appeared because the main thrust of the defense was to hold in the codefendant and minimize the damages.

The conclusions that the defendant did not really care whether Dewey appeared and that the main thrust of the defense was to try to hold in a codefendant and minimize the damages are not supported by the subordinate facts found in the findings in the present case because there are no facts that show that these issues were tried in the original case. Therefore, these conclusions must be stricken. *Manchester State Bank* v. *Reale,* 172 Conn. 520, 523, 375 A.2d 1009 (1977). There still remain the conclusions that Dewey did not violate his obligation to cooperate, that Dewey did not receive a disclaimer, and that the defendant breached its duty to protect its insured's interests because of its decision not to ask for a continuance when Dewey did not appear.

The fact that Dewey went to a bar instead of waiting at a garage is of no import. Not making any attempt to notify his counsel was not ideal conduct on his part. On the other hand, the defendant's decision to disclaim and proceed without any effort to determine Dewey's whereabouts after he had promised on the previous evening to appear was important if not decisive evidence to be considered by the court. The fact that the trial court in the original case "wanted to proceed with the case" is not conclusive evidence that a continuance would not have been granted and acquiesced in by the plaintiff had the motion been made. The remaining conclusions of the court are supported by the facts found. *Roby* v. *Connecticut General Life Ins. Co.,* 166 Conn. 395, 397, 349 A.2d 838 (1974); *Klein*

v. *Chatfield,* 166 Conn. 76, 80, 347 A.2d 58 (1974). It was for the court to determine whether under the facts in this case there had been a violation of the condition to cooperate under the insured's policy and whether the defendant had breached its duty to protect the interests of its insured. On the basis of the record in this case, it cannot be stated as a matter of law that the court erred in reaching the conclusions that there was no breach of the condition requiring cooperation by the insured and that the defendant had breached its obligation to defend.

The defendant has assigned error in the trial court's refusal to open the judgment. This claim has no merit. "A motion to open and vacate a judgment during the term at which it was rendered is addressed to the court's discretion, and the action of the court will not be disturbed on appeal unless it has acted unreasonably and in clear abuse of its discretion. *Cichy* v. *Kostyk,* 143 Conn. 688, 697, 125 A.2d 483; *McCulloch* v. *Pittsburgh Plate Glass Co.,* 107 Conn. 164, 167, 140 A. 114." *State* v. *Fahey,* 147 Conn. 13, 15, 156 A.2d 463 (1959). The defendant's affidavit, accompanying its motion, does not allude to any new evidence not available at the time of trial; rather it outlines an attack on one of the trial court's conclusions of law. The taking of an appeal is the proper means of attacking the trial court's conclusions.[2] Thus, we find that the trial court did not abuse its discretion in denying the defendant's motion to open the judgment.

There is no error.

In this opinion the other judges concurred.

---

[2] The defendant has attacked this particular conclusion on appeal. See the discussion, supra, on the court's conclusion about the main thrust of the defense.